IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SANDRA MCCLELLAND, CRAIG S. GREER, JEANETTA R. PERKINS, DAWN CORNWELL, MONTUELLE PRATER and JOI SHEWFELT, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:15-cv-00985 |
| v. | ) ) | |
| VILLAGE OF CAHOKIA, ILLINOIS, | ) ) | COMPLAINT FOR DECLARATORY JUDGMENT, COMPENSATION, |
| CURTIS L. MCCALL JR., named in his individual and official capacities, | ) ) ) | EQUITABLE AND OTHER RELIEF |
| JEFFERY K. RADFORD, SR. named in His individual and official capacities, | ) ) ) | JURY TRIAL DEMANDED |
| MELBA SANDERS, named in her individual and official capacities, | ) ) ) | |
| PHYLLIS PEARSON named in her individual and official capacities, | ) ) ) | |
| GLORIA LIDDEL WARE, named in her individual and official capacities, | ) ) ) | |
| Defendants. | ) | |

## **COMPLAINT**

1.    The Plaintiffs Sandra McClelland, Craig S. Greer, Jeanetta R. Perkins, Dawn Cornwell, Montuelle Prater and Joi Shewfelt (collectively, "Plaintiffs") are individuals who bring this action against Defendants for unlawful deprivation of the Plaintiffs' rights and privileges secured by the United States Constitution because Defendants have engaged in unlawful retaliation and discrimination against the Plaintiffs.

2.      Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, compensation, damages, benefits, equitable and other relief pursuant to 28 U.S.C. § 1983 *et seq*.

## JURISDICTION AND VENUE

3.      The Court's jurisdiction over this action is conferred by 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983.

4.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff Sandra McClelland ("McClelland") is an individual who resides in Cahokia, Illinois. At all times material herein, Plaintiff McClelland is a "person" within the meaning of 42 U.S.C. § 1983.

6.      Plaintiff Craig S. Greer ("Greer") is an individual who resides in Cahokia, Illinois. At all times material herein, Plaintiff Greer is a "person" within the meaning of 42 U.S.C. § 1983.

7.      Plaintiff Jeanetta Perkins ("Perkins") is an individual who resides in Cahokia, Illinois.  At all times material herein, Plaintiff Perkins is a "person" within the meaning of 42 U.S.C. § 1983.

8.      Plaintiff Dawn Cornwell ("Cornwell") is an individual who resides in Cahokia, Illinois. At all times material herein, Plaintiff Cornwell is a "person" within the meaning of 42 U.S.C. § 1983.

9.      Plaintiff Montuelle Prater ("Prater") is an individual who resides in Cahokia, Illinois.  At all times material herein, Plaintiff Prater is a "person" within the meaning of 42 U.S.C. § 1983.

10.     Plaintiff Joi Shewfelt ("Shewfelt") is an individual who resides in Cahokia,

Illinois.  At all times material herein, Plaintiff Shewfelt is a "person" within the meaning of 42 U.S.C. § 1983.

11.      Defendant Village of Cahokia ("Village") is a public body and an incorporated municipality under the laws of the state of Illinois. At all times material herein, the Village has been a "person" within the meaning of 42 U.S.C. § 1983.

12.      Defendant Curtis L. McCall, Jr. ("McCall") is the mayor of the Defendant Village. At all times relevant to this Complaint, Defendant McCall has been actively engaged in the management, supervision and control of the operations, activities, affairs, finances, property, personnel, compensation and employment conditions of the Village. Defendant McCall is now, and has been at all times material herein, a "person" within the meaning of 42 U.S.C. § 1983. Defendant McCall is named in his individual capacity and also in his official capacity. Defendant McCall is personally liable for the violations of law and relief claimed herein.

13.      Defendant Jeffery K. Radford, Sr. ("Radford") is a Trustee on the Board of Trustee of the Village. At all times relevant to this Complaint, Defendant Radford has been actively engaged in the management, supervision and control of the operations, activities, affairs, finances, property, personnel, compensation and employment conditions of the Village. Defendant Radford is now, and has been at all times material herein, a "person" within the meaning of 42 U.S.C. § 1983. Defendant Radford is named in his individual capacity and also in his official capacity. Defendant Radford is personally liable for the violations of law and relief claimed herein.

14.      Defendant Melba Sanders ("Sanders") is a Trustee on the Board of Trustee of the Village. At all times relevant to this Complaint, Defendant Sanders has been actively engaged in the management, supervision and control of the operations, activities, affairs,

finances, property, personnel, compensation and employment conditions of the Village. Defendant Sanders is now, and has been at all times material herein, a "person" within the meaning of 42 U.S.C. § 1983. Defendant Sanders is named in her individual capacity and also in her official capacity. Defendant Sanders is personally liable for the violations of law and relief claimed herein.

15.     Defendant Phyllis Pearson ("Pearson") is a Trustee on the Board of Trustee of the Village. At all times relevant to this Complaint, Defendant Pearson has been actively engaged in the management, supervision and control of the operations, activities, affairs, finances, property, personnel, compensation and employment conditions of the Village. Defendant Pearson is now, and has been at all times material herein, a "person" within the meaning of 42 U.S.C. § 1983. Defendant Pearson is named in her individual capacity and also in her official capacity. Defendant Pearson is personally liable for the violations of law and relief claimed herein.

16.     Defendant Gloria Liddell Ware ("Ware") is a Trustee on the Board of Trustee of the Village. At all times relevant to this Complaint, Defendant Ware has been actively engaged in the management, supervision and control of the operations, activities, affairs, finances, property, personnel, compensation and employment conditions of the Village. Defendant Ware is now, and has been at all times material herein, a "person" within the meaning of 42 U.S.C. § 1983. Defendant Ware is named in her individual capacity and also in her official capacity. Defendant Ware is personally liable for the violations of law and relief claimed herein.

COMMON ALLEGATI ONS

A.  *Plaintiffs' Employment with the Village*

17.     Plaintiff McClelland was hired as the mayor's secretary by the Defendant

4

Village in May 2011.  At the time of her termination, she was the only finance clerk in the Village and she was the only person in the finance department.

18.      In the four (4) years that Plaintiff McClelland has worked for the Village, she compiled an excellent employment record.

19.      Plaintiff Greer was hired as a pool/rink supervisor by the Defendant Village in June 2013.  At the time of his termination, Plaintiff Greer was a code enforcement officer.

20.      In the two (2) years that Plaintiff Greer has worked for the Village, he compiled an excellent employment record.

21.      Plaintiff Perkins was hired as a park ranger by the Defendant Village in October 2011.  On June 22, 2015, Plaintiff Perkins was transferred from being a code enforcement clerk to being a park clerk.  As a code enforcement clerk, Plaintiff Perkins scheduled inspections and issued/processed occupancy permits.  As a park clerk, Plaintiff Perkins picks up trash on the roadways, cleans bathrooms and weed-whacks grass on Village property.

22.      In the four (4) years that Plaintiff Perkins has worked for the Village, she has compiled an excellent employment record.

23.      Plaintiff Cornwell was hired as a clerk for water/sewer department by the Defendant Village in May 1989. On June 22, 2015, Plaintiff Cornwell was transferred from being an office manager to being the street secretary/clerk.  As the office manager, Plaintiff Cornwell's duties included management of accounts payable and receivable, administration of insurance, and office duties as needed.  As the street secretary/clerk, Plaintiff Cornwell answers the phone and cleans the restrooms and office.

24.       In the twenty five (25) years that Plaintiff Cornwell has worked for the Village, she has compiled an excellent employment record.

25.    Plaintiff Prater was hired as a part-time laborer in the water/sewer department by the Defendant Village in August 2013. At the time of his termination, Plaintiff Prater was a full-time laborer in the water/sewer department.

26.    In the almost two (2) years that Plaintiff Prater has worked for the Village, he compiled an excellent employment record.

27.    Plaintiff Shewfelt was hired as a receptionist/clerk at the fitness center by the Defendant Village in 2012.  At the time of her termination, Plaintiff Shewfelt was a customer service/collections clerk in the water/sewer department.

28.    In the approximately three (3) years that Plaintiff Shewfelt has worked for the Village, she compiled an excellent employment record.

*B.   Plaintiffs' Political Activity in 2011*

29.    In 2010, Gary Cornwell ("Mayor Cornwell"), who is Plaintiff Cornwell's husband, announced his candidacy for Mayor of the Village.

30.    In 2011 Mayor Cornwell ran against Defendant Radford, Brian Moore, Bernadette Wiggins and Virginia Edwards.

31.    In support of Mayor Cornwell:

a.    Plaintiff McClelland attended and worked at fundraisers, and worked for Mayor Cornwell at a polling place on Election Day.

b.    Plaintiff Greer attended fundraiser events and canvassed from door to door campaigning for Mayor Cornwell.

c.    Plaintiff Perkins canvassed from door to door campaigning for Mayor Cornwell.

d.    Plaintiff Cornwell orchestrated all events, including several trivia nights

and golf tournaments; she worked the polls on Election Day, and; she created most of the campaign literature and regularly canvassed from door to door.

32.     The election was held on April 5, 2011. Mayor Cornwell won.

*C.  Plaintiffs' Political Activity in 2012*

33.     In 2012, Plaintiff Perkins ran for precinct committeeman for the Centerville Township, precinct 26.  Plaintiff Perkins ran against Defendant Radford.

34.     Mark McClelland (who is the husband of Plaintiff McClelland) ran for precinct committeeman for the Centerville Township, precinct 23.  Mark McClelland ran against Darryl Bolden.

35.     Joe Morgan ran for precinct committeeman for the Centerville Township, precinct 2.  Joe Morgan ran against Rich Duncan.

36.     Joe Morgan also ran for the District 25 St. Clair County Board seat against then-incumbent Defendant Radford.

37.     In March 2012, Joe Morgan won the primary election against Defendant Radford.

38.     After Joe Morgan won the primary, Defendant McCall announced his candidacy (as an independent) for the same District 25 St. Clair County Board seat.  Defendant Radford supported Defendant McCall's decision to run against Joe Morgan.  Defendant Radford stated "McCall is a good, bright young man."   Defendant Radford also called Joe Morgan a "wolf in sheep's clothing" because Morgan (historically a democrat) had voted republican.

39.     In support of Plaintiff Perkins, Mark McClelland and Joe Morgan:

        a.      Plaintiff McClelland organized Mark McClelland's campaign; canvassed

7

for Mark McClelland, Plaintiff Perkins and Joe Morgan; attended fundraisers, and; publically spoke out on behalf of Mark McClelland, Plaintiff Perkins and Joe Morgan.

b.    Plaintiff Perkins ran a robust campaign against Defendant Radford.

c.    Plaintiff Cornwell attended fundraisers and helped create campaign literature.

40.    On or about November 6, 2012, Defendant McCall beat Joe Morgan in the general election by approximately ten (10) votes.

41.    After Defendant McCall beat Joe Morgan, Curtis McCall, Sr. (Defendant McCall's father) appointed Defendant Radford to Centerville Township trustee, a position that held been held by Defendant McCall.

### D. Plaintiffs' Political Activity in 2013

42.    The Village is divided into six districts with one Trustee representing each district. The Board of Trustees' terms are for four (4) years. Every two (2) years the Village elects three (3) Trustees.

43.    In 2013, James Wall ran for Trustee of District 6 against Defendant Phyllis Pearson.

44.    Plaintiff Perkins ran for Centreville Township Trustee against Defendant Radford.

45.    In support of Plaintiff Perkins and James Wall (and in opposition to Defendant Pearson and Defendant Radford):

a.    Plaintiff McClelland canvassed door to door, attended fundraisers, and worked the polling station on Election Day.

b.     Plaintiff Perkins canvassed door to door, attended fundraisers, and worked the polling station handing out campaign materials on the day of the election.

c.     Plaintiff Cornwell attended fundraisers, canvassed door to door, and helped create campaign literature for James Wall and Plaintiff Perkins.

*E.  Plaintiffs' Political Activity in 2014*

46.     In 2014, Plaintiff Perkins ran for precinct committeeman for the Centerville Township, precinct 26.  Plaintiff Perkins ran against Defendant Radford again.

47.     Mark McClelland ran for precinct committeeman for the Centerville Township, precinct 23.  Mark McClelland ran against Darryl Bolden again.

48.     Joe Morgan ran for precinct committeeman for the Centerville Township, precinct 2.  Joe Morgan ran against Rich Duncan again but, this time, Morgan won.

49.     In support of Plaintiff Perkins, Mark McClelland and Joe Morgan:

a.     Plaintiff McClelland canvassed door to door, attended fundraisers, and worked the polling station on Election Day.

b.     Plaintiff Perkins canvassed door to door, attended fundraisers, and worked the polling station (handing out campaign materials) on the day of the election.

c.     Plaintiff Cornwell attended fundraisers, canvassed door to door, and helped create campaign literature for Mark McClelland, Plaintiff Perkins and Joe Morgan.

*F.  2015 Election*

50.     In April 2015 the Village held an election for:  mayor; clerk; three (3) positions

9

on the Board of Trustees for the Village; four (4) positions on the School District 187 Board of Education ("School Board"), and; four (4) positions on the Commonfields of Cahokia Public Water District ("Commonfields").

51.   Incumbent Mayor Cornwell ran for re-election against Defendant McCall.

52.   Myra Gummersheimer ran against Rich Duncan for Village Clerk.

53.   Valerie White ran against Defendant Sanders for the Trustee position in District 1.

54.   Kathi Carrico ran against Defendant Ware for the Trustee position in District 2.

55.   Mark McClelland ran against Defendant Radford for the Trustee position in District 5.

56.   Mayor Cornwell, Myra Gummersheimer, Valerie White, Kathi Carrico and Mark McClelland ran on the same ticket.  They called themselves the "Pride in Cahokia Party."

57.   Defendant McCall, Defendant Sanders, Defendant Ware, Defendant Radford and Rich Duncan ran on the same ticket.  They called themselves the "McCall Team."

58.   The School District 187 is the school district serving students in and near the Village of Cahokia. The School District 187 Board of Education ("School Board") is composed of seven (7) members.  In 2015, there were four (4) School Board Member positions available. The four (4) candidates who received the most votes would be elected to the School Board.

59.   Plaintiff Perkins, Plaintiff Greer, Rhonda Nichols and Cristiana Walker ran on the same ticket for School Board in 2015.

60.   Plaintiff Perkins, Plaintiff Greer, Rhonda Nichols and Cristiana Walker supported and were supported by the "Pride in Cahokia Party."

61.   Drake Jackson, Kimberly Combs, Peggy Shelton and Chris Belt ran on the same

10

ticket for School Board in 2015.

62.      Drake Jackson, Kimberly Combs, Peggy Shelton and Chris Belt supported and were supported by the McCall Team.

63.      Commonfields provides water and sewer services to the citizens and businesses in the Village.   In 2015, there were four (4) Trustee positions available.   Thus, the four (4) candidates who received the most votes would be elected to the Commonfields Board of Trustees.

64.      Plaintiff McClelland, Terry Gischer, Joe Morgan and Rory Morgan ran on the same ticket for Commonfields Board of Trustees in 2015.

65.      Plaintiff McClelland, Terry Gischer, Joe Morgan and Rory Morgan supported and were supported by the "Pride in Cahokia Party."

66.      Darrell I. Bolden, Curtis L. McCall (Sr.), Michelle Smith and Charles Rattler ran on the same ticket for Commonfields Board of Trustees in 2015.

67.      Darrell I. Bolden, Curtis L. McCall (Sr.), Michelle Smith and Charles Rattler supported and were supported by the McCall Team.

*G.   Plaintiffs' Political Activity in 2015*

68.      Aside from running for Commonfields Board of Trustees (against the candidates supported by the McCall Team), Plaintiff McClelland supported candidates who were directly opposed to Defendants McCall, Sanders, Ware and Radford.

69.      Plaintiff McClelland's opposition to the McCall Team included canvassing from door to door on an average of four (4) days a week from February to April 2015.   While canvassing Plaintiff McClelland would hand out campaign literature and set forth the reasons why she and the "Pride in Cahokia Party" should be elected.   For instance, Plaintiff McClelland

regularly said to citizens, "McCall has been on the County Board for 2 years; Radford has been on Board of Trustees for 4 years, and they haven't done anything.  Why do think they will do something for you now?"

70.     Plaintiff McClelland regularly canvassed with her husband (who was running against Defendant Radford), Plaintiff Cornwall, Mayor Cornwell, Plaintiff Greer, Plaintiff Perkins, Christina Walker, Joe Morgan, Plaintiff Shewfelt and/or Plaintiff  Prater.

71.     On one occasion while canvassing with Plaintiff Cornwell, Plaintiff McClelland noticed persons from the McCall Team touching Mayor Cornwell's campaign materials. Accordingly, Plaintiff McClelland stated "What are you doing with Mayor Cornwell's handout?" At the same time, the constituent walked to his door and took Mayor Cornwell's campaign material from the McCall Team member's hand.

72.     Sometime thereafter, the Cahokia Police Department and Mayor Cornwell were notified that a large amount of Mayor Cornwell's handouts were seen in a dumpster just outside Defendant McCall's campaign headquarters which was located at the VFW Hall on Water Street. Accordingly, Plaintiff Cornwell, Plaintiff Perkins and Christina Walker followed Police Officer Ruberstell to the VFW Hall to investigate the allegation. When they arrived, they saw Mayor Cornwell's campaign materials in the dumpster.

73.     Aside from running for School Board (against the candidates supported by the McCall Team), Plaintiff Perkins supported candidates who were directly opposed to Defendants McCall, Sanders, Ware and Radford.

74.     Plaintiff Perkins' opposition to the McCall Team included continuous canvassing from door to door and speaking out against the candidacies of Defendants McCall, Sanders, Ware, and Radford.

75.     In late 2014 or early 2015, Plaintiff Perkins saw Defendant McCall walking down the street and handing out flyers.  Defendant McCall approached Plaintiff Perkins and stated something like, "I want us to be friends.  I want to work with you in the next election." Plaintiff Perkins declined Defendant McCall's offer.

76.     Aside from running for School Board (against the candidates supported by the McCall Team), Plaintiff Greer supported candidates who were directly opposed to Defendants McCall, Sanders, Ware and Radford.

77.     Plaintiff Greer's opposition to the McCall Team included frequently canvassing from door to door and putting up yard signs, attending fundraisers and publically speaking out against the candidacies of Defendants McCall, Sanders, Ware and Radford.

78.     Though Plaintiff Cornwell did not run for elected office in 2015, she actively supported the "Pride in Cahokia Party" against Defendants McCall, Sanders, Ware and Radford.

79.     Like in 2011, Plaintiff Cornwell orchestrated all events, including several trivia nights, golf tournaments and dinners; she worked the polls on Election Day, and; she created most of the campaign literature.  When canvassing from door to door for the "Pride in Cahokia Party" she would publically speak out against the candidacies of Defendants McCall, Sanders, Ware, and Radford.

80.     Though Plaintiff Prater did not run for elected office in 2015, he actively supported the "Pride in Cahokia Party" against Defendants McCall, Sanders, Ware and Radford. Plaintiff Prater attended a trivia night fundraiser, placed a sign in his yard and sticker on his vehicle to show support for "Pride in Cahokia Party."  Plaintiff Prater also canvassed from door to door by himself on occasion and with Peggy Torry (Christina Walker's mother), Joe Morgan and Rory Morgan.  Plaintiff Prater worked the poll on Election Day and handed out campaign

materials on behalf of "Pride in Cahokia Party."  Finally, prior to the election, Plaintiff Prater helped collect signatures on a petition so that Mayor Cornwell could become a candidate for mayor.

81.     Though Plaintiff Shewfelt did not run for elected office in 2015, she actively supported the "Pride in Cahokia Party" against Defendants McCall, Sanders, Ware and Radford. Shewfelt attended a BBQ for "Pride in Cahokia Party" and she answered questions about the candidates. Shewfelt also canvassed from door to door with Plaintiff Cornwell and Mayor Cornwell.  On behalf of the "Pride in Cahokia Party" Shewfelt was a poll-watcher on Election Day.  Finally, Shewfelt displayed a "Pride in Cahokia Party" sign in her yard.

82.     Prior to the election, Plaintiff Shewfelt was approached by Defendant McCall and three (3) other individuals at her home.  Plaintiff Shewfelt was told that if she supported Defendant McCall and the McCall Team, she would be promoted from part-time to full-time, she would be paid twice as much, and get benefits.  She was then told that "If you are with us, you'll have two (2) full time employees in the house."  This was in reference to Plaintiff Shewfelt's husband, who is also a part-time employee for the Village.   Shewfelt did not accept the bribe. Instead, she asked Defendant McCall numerous questions such as "What are you going to do to help Cahokia?"  McCall did not answer any of the questions.

83.     A few weeks later a member of the McCall Team was canvasing and approached Shewfelt while she was at home and stated "I know who you're for.  We got you."

*I.  2015 Election Results*

84.     The election was held on April 7, 2015.   The election results were as follows:

a.     Defendant McCall defeated Mayor Cornwell in the mayoral race.

b.     Rich Duncan defeated Myra Gummersheimer for Village Clerk.

14

c.    Defendant Sanders defeated Valerie White in the race for the District 1 Trustee.

d.    Defendant Ware defeated Kathi Carrico in the race for the District 2 Trustee.

e.    Defendant Radford defeated Mark McClelland in the race for the District 5 Trustee.

f.    Drake Jackson, Kimberly Combs, Peggy Shelton and Chris Belt defeated Plaintiff Perkins, Plaintiff Greer, Rhonda Nichols and Cristiana Walker in the race for the School Board.

g.    Darrell I. Bolden, Curtis L. McCall (Sr.), Michelle Smith and Charles Rattler defeated Plaintiff McClelland, Terry Gischer, Joe Morgan and Rory Morgan in the race for Commonfields Board of Trustees.

*J.  Plaintiffs Receive Notice of Administrative Leave*

85.    On June 19, 2015, Plaintiff McClelland received a phone call from Rhonda Nichols stating that Nichols was being placed on administrative leave until further notice. Within minutes of hanging up the phone, Plaintiff McClelland walked to Defendant McCall's office, knocked on the door and entered his office with permission. Plaintiff McClelland stated to Defendant McCall, "Rhonda Nichols says everyone is on leave until further notice." Defendant McCall stated, "Yeah, its true. Nothing against anyone, no one has done anything wrong. I'm just taking the town in a different direction." Plaintiff McClelland asked if she was fired too. Defendant McCall said "Yes" but he re-affirmed that she did nothing wrong. In response, Plaintiff McClelland asked Defendant McCall for her letter notifying her of the administrative leave. Defendant McCall handed her the letter and she was escorted off of the

Village property by a police officer.

86.     On June 19, 2015, a police officer handed Plaintiff Greer a letter notifying him that he was on administrative leave until further notice.  The police officer escorted Plaintiff Greer off the Village's property.

87.     On June 19, 2015, a police officer handed Plaintiff Perkins a letter notifying her that effective June 22, 2015 she would be transferred to park clerk.  After delivering the letter, the police officer escorted Plaintiff Perkins off the Village's property.

88.     On June 19, 2015, a police officer handed Plaintiff Cornwell a letter notifying her that effective June 22, 2015 she would be transferred to the street department.

89.     On June 19, 2015, a police officer handed Plaintiff Prater a letter notifying him that he was on administrative leave until further notice.  As Plaintiff Prater was home when he received letter, he was not escorted off the Village's property.

90.     On June 19, 2015, a police officer handed Shewfelt a letter notifying her that she was on administrative leave until further notice.  Shewfelt was instructed to clean out her office and leave the Village's property.

*K.  Defendants Pass Administrative Ordinances*

91.     On Tuesday, June 23, 2015, Defendant McCall and the Board of Trustees had a regularly scheduled board meeting.  The meeting was held at 7 pm at Cahokia Village Hall at 103 Main Street, Cahokia, Illinois 62206.

92.     At the meeting Defendant McCall presented Ordinance No. 15-1299 titled "An Ordinance Terminating the Employment of Personnel."

93.     Ordinance No. 15-1299 terminated the employment of Plaintiff Perkins, Plaintiff Greer, Rhonda Nichols and Cristiana Walker. These individuals ran on the same ticket

for the School Board and against the candidates supported by McCall Team.

94.     Ordinance No. 15-1299 also terminated the employment of Plaintiff McClelland and Joe Morgan.  These individuals ran on the same ticket for the Commonfields Board of Trustees and against the candidates supported by McCall Team.

95.     Terry Gischer and Rory Morgan ran on the same ticket as Plaintiff McClelland and Joe Morgan.  However, because Terry Gischer was not a Village employee, he could not be terminated.  While Rory Morgan was a Village employee, he is only one of two Village employees with the training and certifications to perform his job at the water/sewer department; thus, he could not be fired. The other employee (who has the required training and certification) is retiring by September 30, 2015.

96.     Other than terminating the employment of Plaintiff McClelland, Plaintiff Greer, Plaintiff Prater, Plaintiff Shewfelt and Joe Morgan no policy was set, no rules were enacted, and nothing from the decision impacted the public.

97.     Defendant McCall also presented Ordinance No. 15-1300 titled "An Ordinance to Transfer Personnel."

98.     Ordinance No. 15-1300 transferred Plaintiff Perkins to the position of Secretary/Clerk of the Park Department, and transferred Plaintiff Cornwell to the position of Secretary/Clerk of the Street Department.

99.     Other than transferring Plaintiff Perkins and Plaintiff Cornwell to different positions, no policy was set, no rules were enacted, and nothing from the decision impacted the public.

100.    The Board of Trustees received their meeting packet with Ordinance No. 15-1299 and Ordinance No. 15-1300 on or about June 21, 2015.

17

101.    Defendant McCall did not permit questions from citizens prior to the vote.

102.    Defendant McCall did not publically discuss Ordinance No. 15-1299 and Ordinance No. 15-1300 with the Board of Trustees.  In other words, there was no public debate about the policy or reasons behind Ordinance No. 15-1299 and Ordinance No. 15-1300.

103.    Defendants Sanders, Ware, Radford and Pearson voted in favor of both Ordinances. The remaining Trustees (Jerry Nichols and Joe Weatherford) voted against the Ordinances.

104.    Defendant McCall exercised an administrative duty by proposing Ordinance No. 15-1299 and Ordinance No. 15-1300.

105.    Defendants Sanders, Ware, Radford and Pearson exercised an administrative duty by voting in favor of Ordinance No. 15-1299 and Ordinance No. 15-1300.

106.    On or about July 9, 2015, Plaintiff Shewfelt saw Defendant McCall at the Village hall.   Upon seeing him, Shewfelt asked McCall why she had been fired. McCall asked Shewfelt to come into his office and shut the door.   Defendant McCall then proceeded to state, "It was nothing personal.  It was political."  In response, Shewfelt stated that she did not know that her job was political.  Defendant McCall retorted "Everything is."  McCall then told Shewfelt that if she completes an employment application and doors open, he may call her back. Finally, McCall told Shewfelt that her husband will be terminated if he keeps posting (political) things on Facebook.  He said, "Tell your husband that if he wants to keep his job, don't do it again."

COUNT I
McClelland v. Defendants

107.    Plaintiff McClelland adopts and incorporates by reference herein, paragraphs 1 through and including 106 of this Complaint.

18

108.    Public endorsement of a candidate for public office and political campaigning and management are protected by the First Amendment.  The First Amendment forbids government officials from taking adverse employment actions against public employees solely for not being supporters of the political party in power.

109.    Prior to the election of Defendants McCall, Sanders, Ware, Radford and Pearson, Plaintiff McClelland worked against them and for their opponents in the election.

110.    At times material herein, Plaintiff McClelland has spoken out as a citizen on matters of public concern, including, but not limited to endorsement or opposition of numerous candidates (including Defendants McCall, Sanders, Ware, Radford and Pearson). The right of the Plaintiff McClelland to speak out freely on these and other matters of public concern, and to engage in political activities, is protected by the First Amendment and the Fourteenth Amendment of the United States Constitution. The public has a vital interest in free and open discussion on issues of public importance.

111.    Defendants McCall, Sanders, Ware, Radford and Pearson were aware that Plaintiff McClelland had spoken out on such matters of public concern and they individually, separately and/or jointly, engaged in actions, omissions and decisions, aimed at denying Plaintiff McClelland's rights and protections granted to her under law. These actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff McClelland to lose wages, compensation, entitlements and rights. In addition, these actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff McClelland to suffer humiliation and harm to her reputation, emotion and mental injury, pain and suffering, financial and other adverse consequences, for which Plaintiff seeks

full damages and make whole relief.

112.     Defendants McCall, Sanders, Ware, Radford and Pearson have adopted, applied and enforced policies, directives, decisions, procedures and practices which have imposed unconstitutional restraints on the free speech rights of Plaintiff McClelland and other Village employees. Such policies, directives, decisions and procedures, both facially and as applied, have prevented, prohibited, and restricted Village employees from participating in free speech and/or political activities.

113.     The Defendants' policies, directives, decisions, and procedures, both on their face and as applied, have chilled and deterred Plaintiff McClelland, and other Village employees similarly situated, from exercising the constitutional right of free speech.

114.     Such actions, omissions and decisions of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly were taken in response to, and in retaliation for, Plaintiff McClelland's exercise of her constitutional and lawful rights to speak out about matters of public concern, in violation of the Plaintiff McClelland's rights safeguarded under the First and Fourteenth Amendments to the United States Constitution.

115.     With knowledge of and in retaliation for the above actions of Plaintiff McClelland, Defendants by and through their policymaking authority of the board consisting of Defendants McCall, Sanders, Ware, Radford and Pearson terminated the Plaintiff from her position on June 23, 2015.  The grounds and reasons offered by Defendants for their adverse actions, omissions and decisions against Plaintiff McClelland were false and pretextual.

116.     Such actions, omissions and decisions on the part of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly were taken under the color of law, and such actions, omissions and decisions have deprived Plaintiff McClelland of

her rights, privileges and immunities secured by the U.S. Constitution and laws in violation of 42 U.S.C. §1983, and for which liability and redress exist under 42 U.S.C. §1983.

117.     Such unlawful actions, omissions and decisions, as alleged herein, make the Defendant Village fully liable to the Plaintiffs under 42 U.S.C. §1983 based on the authority and actual decisions of Defendant Village and other Defendants. In addition, such unlawful actions, omissions and decisions, as alleged herein, were based on the policymaking and final decision-making authority of the Defendant Village, and were based on the policy, custom and practice of the Village.

118.     Such unlawful actions, omissions and decisions of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly, alleged herein, were done in a knowing, willful, reckless, and bad faith manner, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

COUNT II
Greer v. Defendants

119.     Plaintiff Greer adopts and incorporates by reference herein, paragraphs 1 through and including 118 of this Complaint.

120.     Public endorsement of a candidate for public office and political campaigning and management are protected by the First Amendment.  The First Amendment forbids government officials from taking adverse employment actions against public employees solely for not being supporters of the political party in power.

121.     Prior to the election of Defendants McCall, Sanders, Ware, Radford and Pearson, Plaintiff Greer worked against them and for their opponents in the election.

122.     At times material herein, Plaintiff Greer has spoken out as a citizen on matters of public concern, including, but not limited to endorsement or opposition of numerous

candidates (including Defendants McCall, Sanders, Ware, Radford and Pearson). The right of the Plaintiff Greer to speak out freely on these and other matters of public concern, and to engage in political activities, is protected by the First Amendment and the Fourteenth Amendment of the United States Constitution. The public has a vital interest in free and open discussion on issues of public importance.

123.    Defendants McCall, Sanders, Ware, Radford and Pearson were aware that Plaintiff Greer had spoken out on such matters of public concern and they individually, separately and/or jointly, engaged in actions, omissions and decisions, aimed at denying Plaintiff Greer's rights and protections granted to him under law. These actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff Greer to lose wages, compensation, entitlements and rights. In addition, these actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff Greer to suffer humiliation and harm to his reputation, emotion and mental injury, pain and suffering, financial and other adverse consequences, for which Plaintiff seeks full damages and make whole relief.

124.    Defendants McCall, Sanders, Ware, Radford and Pearson have adopted, applied and enforced policies, directives, decisions, procedures and practices which have imposed unconstitutional restraints on the free speech rights of Plaintiff Greer and other Village employees. Such policies, directives, decisions and procedures, both facially and as applied, have prevented, prohibited, and restricted Village employees from participating in free speech and/or political activities.

125.    The Defendants' policies, directives, decisions, and procedures, both on their

face and as applied, have chilled and deterred Plaintiff Greer, and other Village employees similarly situated, from exercising the constitutional right of free speech.

126.    Such actions, omissions and decisions of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly were taken in response to, and in retaliation for, Plaintiff Greer's exercise of his constitutional and lawful rights to speak out about matters of public concern, in violation of the Plaintiff Greer's rights safeguarded under the First and Fourteenth Amendments to the United States Constitution.

127.    With knowledge of and in retaliation for the above actions of Plaintiff Greer, Defendants by and through their policymaking authority of the board consisting of Defendants McCall, Sanders, Ware, Radford and Pearson terminated the Plaintiff from his position on June 23, 2015.  The grounds and reasons offered by Defendants for their adverse actions, omissions and decisions against Plaintiff Greer were false and pretextual.

128.    Such actions, omissions and decisions on the part of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly were taken under the color of law, and such actions, omissions and decisions have deprived Plaintiff Greer of his rights, privileges and immunities secured by the U.S. Constitution and laws in violation of 42 U.S.C. §1983, and for which liability and redress exist under 42 U.S.C. §1983.

129.    Such unlawful actions, omissions and decisions, as alleged herein, make the Defendant Village fully liable to the Plaintiffs under 42 U.S.C. §1983 based on the authority and actual decisions of Defendant Village and other Defendants. In addition, such unlawful actions, omissions and decisions, as alleged herein, were based on the policymaking and final decision-making authority of the Defendant Village, and were based on the policy, custom and practice of the Village.

130.     Such unlawful actions, omissions and decisions of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly, alleged herein, were done in a knowing, willful, reckless, and bad faith manner, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

COUNT III
Perkins v. Defendants

131.     Plaintiff Perkins adopts and incorporates by reference herein, paragraphs 1 through and including 130 of this Complaint.

132.     Public endorsement of a candidate for public office and political campaigning and management are protected by the First Amendment.  The First Amendment forbids government officials from taking adverse employment actions against public employees solely for not being supporters of the political party in power.

133.     Prior to the election of Defendants McCall, Sanders, Ware, Radford and Pearson, Plaintiff Perkins worked against them and for their opponents in the election.

134.     At times material herein, Plaintiff Perkins has spoken out as a citizen on matters of public concern, including, but not limited to endorsement or opposition of numerous candidates (including Defendants McCall, Sanders, Ware, Radford and Pearson). The right of the Plaintiff Perkins to speak out freely on these and other matters of public concern, and to engage in political activities, is protected by the First Amendment and the Fourteenth Amendment of the United States Constitution. The public has a vital interest in free and open discussion on issues of public importance.

135.     Defendants McCall, Sanders, Ware, Radford and Pearson were aware that Plaintiff Perkins had spoken out on such matters of public concern and they individually, separately and/or jointly, engaged in actions, omissions and decisions, aimed at denying Plaintiff

Perkins's rights and protections granted to her under law. These actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff Perkins to lose privileged, entitlements and rights. In addition, these actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff Perkins to suffer humiliation and harm to her reputation, emotion and mental injury, pain and suffering, financial and other adverse consequences, for which Plaintiff seeks full damages and make whole relief.

136.    Defendants McCall, Sanders, Ware, Radford and Pearson have adopted, applied and enforced policies, directives, decisions, procedures and practices which have imposed unconstitutional restraints on the free speech rights of Plaintiff Perkins and other Village employees. Such policies, directives, decisions and procedures, both facially and as applied, have prevented, prohibited, and restricted Village employees from participating in free speech and/or political activities.

137.    The Defendants' policies, directives, decisions, and procedures, both on their face and as applied, have chilled and deterred Plaintiff Perkins, and other Village employees similarly situated, from exercising the constitutional right of free speech.

138.    Such actions, omissions and decisions of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly were taken in response to, and in retaliation for, Plaintiff Perkins's exercise of her constitutional and lawful rights to speak out about matters of public concern, in violation of the Plaintiff Perkins's rights safeguarded under the First and Fourteenth Amendments to the United States Constitution.

139.    With knowledge of and in retaliation for the above actions of Plaintiff Perkins,

Defendants by and through their policymaking authority of the board consisting of Defendants McCall, Sanders, Ware, Radford and Pearson transferred the Plaintiff to a less desirable position on June 23, 2015. The grounds and reasons offered by Defendants for their adverse actions, omissions and decisions against Plaintiff Perkins were false and pretextual.

140.    Such actions, omissions and decisions on the part of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly were taken under the color of law, and such actions, omissions and decisions have deprived Plaintiff Perkins of her rights, privileges and immunities secured by the U.S. Constitution and laws in violation of 42 U.S.C. §1983, and for which liability and redress exist under 42 U.S.C. §1983.

141.    Such unlawful actions, omissions and decisions, as alleged herein, make the Defendant Village fully liable to the Plaintiffs under 42 U.S.C. §1983 based on the authority and actual decisions of Defendant Village and other Defendants. In addition, such unlawful actions, omissions and decisions, as alleged herein, were based on the policymaking and final decision-making authority of the Defendant Village, and were based on the policy, custom and practice of the Village.

142.    Such unlawful actions, omissions and decisions of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly, alleged herein, were done in a knowing, willful, reckless, and bad faith manner, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

COUNT IV
Cornwell v. Defendants

143.    Plaintiff Cornwell adopts and incorporates by reference herein, paragraphs 1 through and including 142 of this Complaint.

144.    Public endorsement of a candidate for public office and political campaigning

26

and management are protected by the First Amendment. The First Amendment forbids government officials from taking adverse employment actions against public employees solely for not being supporters of the political party in power.

145.   Prior to the election of Defendants McCall, Sanders, Ware, Radford and Pearson, Plaintiff Cornwell worked against them and for their opponents in the election.

146.   At times material herein, Plaintiff Cornwell has spoken out as a citizen on matters of public concern, including, but not limited to endorsement or opposition of numerous candidates (including Defendants McCall, Sanders, Ware, Radford and Pearson). The right of the Plaintiff Cornwell to speak out freely on these and other matters of public concern, and to engage in political activities, is protected by the First Amendment and the Fourteenth Amendment of the United States Constitution. The public has a vital interest in free and open discussion on issues of public importance.

147.   Defendants McCall, Sanders, Ware, Radford and Pearson were aware that Plaintiff Cornwell had spoken out on such matters of public concern and they individually, separately and/or jointly, engaged in actions, omissions and decisions, aimed at denying Plaintiff Cornwell's rights and protections granted to her under law. These actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff Cornwell to lose privileged, entitlements and rights. In addition, these actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff Cornwell to suffer humiliation and harm to her reputation, emotion and mental injury, pain and suffering, financial and other adverse consequences, for which Plaintiff seeks full damages and make whole relief.

148.     Defendants McCall, Sanders, Ware, Radford and Pearson have adopted, applied and enforced policies, directives, decisions, procedures and practices which have imposed unconstitutional restraints on the free speech rights of Plaintiff Cornwell and other Village employees. Such policies, directives, decisions and procedures, both facially and as applied, have prevented, prohibited, and restricted Village employees from participating in free speech and/or political activities.

149.     The Defendants' policies, directives, decisions, and procedures, both on their face and as applied, have chilled and deterred Plaintiff Cornwell, and other Village employees similarly situated, from exercising the constitutional right of free speech.

150.     Such actions, omissions and decisions of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly were taken in response to, and in retaliation for, Plaintiff Cornwell's exercise of her constitutional and lawful rights to speak out about matters of public concern, in violation of the Plaintiff Cornwell's rights safeguarded under the First and Fourteenth Amendments to the United States Constitution.

151.     With knowledge of and in retaliation for the above actions of Plaintiff Cornwell, Defendants by and through their policymaking authority of the board consisting of Defendants McCall, Sanders, Ware, Radford and Pearson transferred the Plaintiff to a less desirable position on June 23, 2015.  The grounds and reasons offered by Defendants for their adverse actions, omissions and decisions against Plaintiff Cornwell were false and pretextual.

152.     Such actions, omissions and decisions on the part of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly were taken under the color of law, and such actions, omissions and decisions have deprived Plaintiff Cornwell of her rights, privileges and immunities secured by the U.S. Constitution and laws in violation of 42

U.S.C. §1983, and for which liability and redress exist under 42 U.S.C. §1983.

153.    Such unlawful actions, omissions and decisions, as alleged herein, make the Defendant Village fully liable to the Plaintiffs under 42 U.S.C. §1983 based on the authority and actual decisions of Defendant Village and other Defendants. In addition, such unlawful actions, omissions and decisions, as alleged herein, were based on the policymaking and final decision-making authority of the Defendant Village, and were based on the policy, custom and practice of the Village.

154.    Such unlawful actions, omissions and decisions of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly, alleged herein, were done in a knowing, willful, reckless, and bad faith manner, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

COUNT V
Prater v. Defendants

155.    Plaintiff Prater adopts and incorporates by reference herein, paragraphs 1 through and including 154 of this Complaint.

156.    Public endorsement of a candidate for public office and political campaigning and management are protected by the First Amendment.  The First Amendment forbids government officials from taking adverse employment actions against public employees solely for not being supporters of the political party in power.

157.    Prior to the election of Defendants McCall, Sanders, Ware, Radford and Pearson, Plaintiff Prater worked against them and for their opponents in the election.

158.    At times material herein, Plaintiff Prater has spoken out as a citizen on matters of public concern, including, but not limited to endorsement or opposition of numerous candidates (including Defendants McCall, Sanders, Ware, Radford and Pearson). The right of the

29

Plaintiff Prater to speak out freely on these and other matters of public concern, and to engage in political activities, is protected by the First Amendment and the Fourteenth Amendment of the United States Constitution. The public has a vital interest in free and open discussion on issues of public importance.

159.    Defendants McCall, Sanders, Ware, Radford and Pearson were aware that Plaintiff Prater had spoken out on such matters of public concern and they individually, separately and/or jointly, engaged in actions, omissions and decisions, aimed at denying Plaintiff Prater's rights and protections granted to him under law. These actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff Prater to lose wages, compensation, entitlements and rights. In addition, these actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff Prater to suffer humiliation and harm to his reputation, emotion and mental injury, pain and suffering, financial and other adverse consequences, for which Plaintiff seeks full damages and make whole relief.

160.    Defendants McCall, Sanders, Ware, Radford and Pearson have adopted, applied and enforced policies, directives, decisions, procedures and practices which have imposed unconstitutional restraints on the free speech rights of Plaintiff Prater and other Village employees. Such policies, directives, decisions and procedures, both facially and as applied, have prevented, prohibited, and restricted Village employees from participating in free speech and/or political activities.

161.    The Defendants' policies, directives, decisions, and procedures, both on their face and as applied, have chilled and deterred Plaintiff Prater, and other Village employees

similarly situated, from exercising the constitutional right of free speech.

162.    Such actions, omissions and decisions of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly were taken in response to, and in retaliation for, Plaintiff Prater's exercise of his constitutional and lawful rights to speak out about matters of public concern, in violation of the Plaintiff Prater's rights safeguarded under the First and Fourteenth Amendments to the United States Constitution.

163.    With knowledge of and in retaliation for the above actions of Plaintiff Prater, Defendants by and through their policymaking authority of the board consisting of Defendants McCall, Sanders, Ware, Radford and Pearson terminated the Plaintiff from his position on June 23, 2015.  The grounds and reasons offered by Defendants for their adverse actions, omissions and decisions against Plaintiff Prater were false and pretextual.

164.    Such actions, omissions and decisions on the part of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly were taken under the color of law, and such actions, omissions and decisions have deprived Plaintiff Prater of his rights, privileges and immunities secured by the U.S. Constitution and laws in violation of 42 U.S.C. §1983, and for which liability and redress exist under 42 U.S.C. §1983.

165.    Such unlawful actions, omissions and decisions, as alleged herein, make the Defendant Village fully liable to the Plaintiffs under 42 U.S.C. §1983 based on the authority and actual decisions of Defendant Village and other Defendants. In addition, such unlawful actions, omissions and decisions, as alleged herein, were based on the policymaking and final decision-making authority of the Defendant Village, and were based on the policy, custom and practice of the Village.

166.    Such unlawful actions, omissions and decisions of Defendants McCall, Sanders,

Ware, Radford and Pearson, individually, separately and/or jointly, alleged herein, were done in a knowing, willful, reckless, and bad faith manner, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

COUNT VI
Shewfelt v. Defendants

167.    Plaintiff Shewfelt adopts and incorporates by reference herein, paragraphs 1 through and including 166 of this Complaint.

168.    Public endorsement of a candidate for public office and political campaigning and management are protected by the First Amendment.  The First Amendment forbids government officials from taking adverse employment actions against public employees solely for not being supporters of the political party in power.

169.    Prior to the election of Defendants McCall, Sanders, Ware, Radford and Pearson, Plaintiff Shewfelt worked against them and for their opponents in the election.

170.    At times material herein, Plaintiff Shewfelt has spoken out as a citizen on matters of public concern, including, but not limited to endorsement or opposition of numerous candidates (including Defendants McCall, Sanders, Ware, Radford and Pearson). The right of the Plaintiff Shewfelt to speak out freely on these and other matters of public concern, and to engage in political activities, is protected by the First Amendment and the Fourteenth Amendment of the United States Constitution. The public has a vital interest in free and open discussion on issues of public importance.

171.    Defendants McCall, Sanders, Ware, Radford and Pearson were aware that Plaintiff Shewfelt had spoken out on such matters of public concern and they individually, separately and/or jointly, engaged in actions, omissions and decisions, aimed at denying Plaintiff Shewfelt's rights and protections granted to her under law. These actions, omissions and

decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff Shewfelt to lose wages, compensation, entitlements and rights. In addition, these actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Plaintiff Shewfelt to suffer humiliation and harm to her reputation, emotion and mental injury, pain and suffering, financial and other adverse consequences, for which Plaintiff seeks full damages and make whole relief.

172.   Defendants McCall, Sanders, Ware, Radford and Pearson have adopted, applied and enforced policies, directives, decisions, procedures and practices which have imposed unconstitutional restraints on the free speech rights of Plaintiff Shewfelt and other Village employees. Such policies, directives, decisions and procedures, both facially and as applied, have prevented, prohibited, and restricted Village employees from participating in free speech and/or political activities.

173.   The Defendants' policies, directives, decisions, and procedures, both on their face and as applied, have chilled and deterred Plaintiff Shewfelt, and other Village employees similarly situated, from exercising the constitutional right of free speech.

174.   Such actions, omissions and decisions of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly were taken in response to, and in retaliation for, Plaintiff Shewfelt's exercise of her constitutional and lawful rights to speak out about matters of public concern, in violation of the Plaintiff Shewfelt's rights safeguarded under the First and Fourteenth Amendments to the United States Constitution.

175.   With knowledge of and in retaliation for the above actions of Plaintiff Shewfelt, Defendants by and through their policymaking authority of the board consisting of Defendants

McCall, Sanders, Ware, Radford and Pearson terminated the Plaintiff from her position on June 23, 2015. The grounds and reasons offered by Defendants for their adverse actions, omissions and decisions against Plaintiff Shewfelt were false and pretextual.

176. Such actions, omissions and decisions on the part of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly were taken under the color of law, and such actions, omissions and decisions have deprived Plaintiff Shewfelt of her rights, privileges and immunities secured by the U.S. Constitution and laws in violation of 42 U.S.C. §1983, and for which liability and redress exist under 42 U.S.C. §1983.

177. Such unlawful actions, omissions and decisions, as alleged herein, make the Defendant Village fully liable to the Plaintiffs under 42 U.S.C. §1983 based on the authority and actual decisions of Defendant Village and other Defendants. In addition, such unlawful actions, omissions and decisions, as alleged herein, were based on the policymaking and final decision-making authority of the Defendant Village, and were based on the policy, custom and practice of the Village.

178. Such unlawful actions, omissions and decisions of Defendants McCall, Sanders, Ware, Radford and Pearson, individually, separately and/or jointly, alleged herein, were done in a knowing, willful, reckless, and bad faith manner, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court grant relief against each of the Defendants, individually, separately, and/or jointly, as follows:

(a) Enter a declaratory judgment declaring that the Defendants have willfully and wrongfully violated their constitutional, statutory, and legal obligations, and deprived the

Plaintiffs of their rights, privileges, protections, compensation and entitlements under law, as alleged herein;

(b)       Enter a permanent injunction enjoining Defendants from continuing to adopt, apply and enforce policies, regulations, directives, decisions, procedures, and practices which prevent, prohibit, restrain and restrict the Plaintiffs from exercising their constitutional rights;

(c)       Order Defendants to rescind the terminations of Plaintiffs Perkins, Greer, Prater, and Shewfelt and to immediately reinstate them to their positions with the Village;

(d)       Order Defendants to rescind the job transfers of Plaintiff Perkins and Plaintiff Cornwell and to immediately reinstate them to their prior positions with the Village;

(e)       Enter a permanent injunction restraining and preventing the Defendants from continuing to discriminate and retaliate against the Plaintiffs, from continuing to interfere with and infringe upon the rights of the Plaintiffs, and from otherwise violating their obligations under the U.S. Constitution and the law;

(f)       Order a complete and accurate accounting of all the compensation and relief to which the Plaintiffs are entitled;

(g)       Award the Plaintiffs monetary damages in the form of back pay, compensation, benefits, unpaid entitlements, plus pre-judgment and post- judgment interest;

(h)       Award the Plaintiffs substantial compensatory damages payable by the Defendants, and substantial punitive damages payable by the individual Defendants, for the violations of Plaintiffs' rights and the harm to their reputations, humiliation, emotional and mental anguish, and for other financial and consequential harm and injuries they have suffered;

(i)       Award the Plaintiffs their reasonable attorneys' fees and the costs and disbursements of this action; and

35

(j)      Grant such other legal and equitable relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully request a trial by jury on all claims presented in this Complaint.

Date:  September 3, 2015

Respectfully submitted,

THE LAW OFFICE OF SARAH N. SWATOSH


_____*Sarah N. Swatosh*_____
Sarah N. Swatosh, IL Bar No. 6300994
3407 S Jefferson Ave, Suite 208
St. Louis, MO 63118
Tel:  314-282-5634
swatosh@protectingemployeerights.com
www.protectingemployeerights.com


Counsel for Plaintiffs Sandra McClelland, Craig S. Greer, Jeanetta R. Perkins, Dawn Cornwell, Montuelle Prater and Joi Shewfelt